# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

KELLY BAURLE and MARK BOOTH,

                                          Plaintiffs,

    v.

                                                                1:18-CV-283
                                                                (LEK/ATB)
COMMISSIONER OF SOCIAL
SECURITY, et al.,

                                          Defendants.

---

KELLY L. BAURLE and MARK BOOTH, Plaintiffs pro se

ANDREW T. BAXTER, U.S. Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

## I.    Procedural History

The Clerk has sent to me for review what was originally filed as an "amended complaint," in plaintiff Kelly Baurle's Social Security Appeal, 1:18-CV-62. (Dkt. No. 1 in 1:18-CV-283, and Dkt. Nos. 11, 13 in 1:18-CV-62). Ms. Baurle's Social Security appeal (18-CV-62), which was filed pursuant to 42 U.S.C. § 405(g), was transferred from the Southern District of New York on January 9, 2018.[1] (Dkt. Nos. 2, 4, 5 in 18-CV-62). 18-CV-62 was assigned to the Honorable Daniel J. Stewart, and that action has proceeded pursuant to NYND General Order 18 which governs procedures in Social Security Actions. (*See generally* Docket Sheet in 18-CV-62).

On February 9, 2018, Ms. Baurle filed what appeared on the first page, to be an

---

[1] Magistrate Judge Daniel Stewart granted Ms. Baurle's request to proceed in forma pauperis ("IFP") on January 19, 2018. (Dkt. No. 7 in 18-CV-62).

"amended complaint" in 18-CV-62.[2] (Dkt. No. 1 in 1:18-CV-283, and Dkt. Nos. 11, 13 in 1:18-CV-62). In this "amended complaint," Ms. Baurle added six plaintiffs and eight new defendants.[3] Although the first page of the document is labeled "Social Security Identification Form, the third page of the document is labeled "Civil Rights Complaint Pursuant to 42 U.S.C. § 1983." (Dkt. No. 1 at CM/ECF pp.1-3). After reviewing the document, on March 6, 2018, Magistrate Judge Stewart ordered the document "Stricken" from the record in 18-CV-62, but directed the Clerk to open a new action, and file the document as an original "complaint." (Dkt. No. 13 in 18-CV-62). Judge Stewart also directed the Clerk to send Ms. Baurle and Mr. Booth (one of the new plaintiffs) applications to proceed IFP.

In accordance with Magistrate Judge Stewart's direction, the Clerk filed this action - 18-CV-283 - and sent applications to proceed IFP to Ms. Baurle and Mr. Booth. The Clerk also mailed IFP applications to Stephanie Baule and Ryan J. Kilts (both listed on the complaint as "adult" children). On April 2, 2018, the court received IFP applications from plaintiffs Kelly Baurle and Mark A. Booth. (Dkt. Nos. 7, 9). Ms. Baurle and Mr. Booth have also filed a motion for appointment of counsel. (Dkt. No. 8). On April 9, 2018, the IFP application sent by the Clerk to Ryan James Kilts was returned "undeliverable." (Dkt. No. 10).

For clarity, I will list the named plaintiffs and defendants:

---

[2] Because plaintiffs are pro se, the Clerk labeled the document as an "amended complaint," but nowhere on the document is it labeled as such.

[3] The docket sheet has thirteen new defendants listed. However, it appears that the Clerk may have misread the complaint and may have listed several of the defendants as two defendants, when they were meant to be one defendant. The complaint is so unclear that such an error is not unreasonable.

## A.    Plaintiffs:

1.    Kelly Baurle
2.    Mark A. Booth
3.    Stephanie R. Baurle ("Adult Child")
4.    Ryan James Kilts ("Adult Child")
5.    C.K. ("Minor Child")
6.    N.B. ("Minor Child")
7.    A.B. ("Minor Child")

## B.    Defendants:[4]

1.    New York Regional Commissioner of Social Security Fred Maurin.[5]
2.    Sheryda Cooper, Commissioner of Fulton County Social Services.
3.    Tammy L. DeLorme, Commissioner of Washington County Social Services.
4.    Maureen Schmidt, Commissioner of Warren County Social Services.
5.    Joyce L. Boyd, Commissioner of Otsego County Social Services.
6.    Collins Mobile Homes and Sales, Inc.
7.    John E. Morrison & Associates, PC
8.    Lasky Law Group, C/O Attorney Jeffrey W. Lasky
9.    Georgia State Board of Workers Compensation.

(Dkt. No. 1 at 1-6).  The court will now turn to a review of the plaintiffs' complaint.

---

[4] As stated above, the Clerk has made an error in listing the defendants.  Plaintiffs have named the Commissioner of Social Security and the Commissioners of three County Departments of Social Services as defendants.  The Clerk has listed the "Commissioners" as a separate defendants from the individuals who hold the positions of Commissioner, resulting in three additional defendants.  In addition, the docket lists Commissioner of Social Security and the "Commissioner of New York State" as separate defendants.  The complaint apparently means to name the Commissioner of Social Security alone.  I will list the defendants as they should be listed, and I will direct the Clerk to correct the docket sheet.

[5] Plaintiff Kelly Baurle's Social Security appeal lists Fred Maurin as the Commissioner of Social Security. 18-CV-62.  However, Nancy Berryhill is the current Commissioner of Social Security. Fred Maurin is New York's Regional Commissioner (and not the proper defendant in a Social Security action).  It appears that plaintiff was mistaken in her naming of Fred Maurin, but because plaintiffs have not named Nancy Berryhill, the court will list only Mr. Maurin as a defendant "Commissioner."

## II.    **IFP and Initial Review**

### A.    **Financial Criteria**

The only two plaintiffs who have filed IFP applications are Kelly Baurle and Mark Booth.  The court finds that these individuals meet the financial criteria to proceed IFP.  Neither Stephanie Baurle, nor Ryan Kilts (both listed as adults) have submitted IFP applications.  They may not proceed as IFP plaintiffs without the court's review of their financial status.  In addition, the complaint lists three minor children as plaintiffs.  Although the children do not need to file separate IFP applications, there are other reasons that this action may not proceed with minor children as plaintiffs, which the court will discuss below.

### B.    **Substance of the Action**

In addition to determining whether plaintiffs meet the financial criteria to proceed IFP, the court must also consider the sufficiency of the allegations set forth in the amended complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss the case at any time if the court determines that the action is (i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i)-(iii).

In determining whether an action is frivolous, the court must consider whether the complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S.

at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974). Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp.*, 550 U.S. at 555). The court will now turn to a consideration of the plaintiffs' complaint under the above standards.

## III.  Complaint

The court will not attempt to cover all of the facts that plaintiffs have included in this complaint. The court would first note that it is clearly, Kelly Baurle who wrote this complaint because most of the facts apply to her. The complaint is a random description of Kelly Baurle's life, beginning in 1977, when her medical/emotional problems purportedly began. (Complaint ("Compl.") at 5).[6] The plaintiff describes

---

[6] The court will cite to the pages of the complaint as assigned by the court's electronic filing system CM/ECF.

dropping out of school and having her first child in 1990. (Compl. at 7). Plaintiff states that "[a]t or about 04/02/1990 - 07/02/1990 Fulton County Protective Services" went to plaintiff's apartment to tell her that she could not keep a child in "a roach infected house and that they can take my baby if I didn't move." (*Id.*) Plaintiff Kelly Baurle continues to describe the difficulties that she had with her children[7] and her housing situation throughout the years. (*Id.*) Plaintiff Kelly Baurle discusses 1991, 1992, 1993, and 1999, in addition to more recent years, up to 2017. (Compl. 7-9). It appears that, plaintiff lived in various Counties throughout the years and had issues with each County's Department of Social Services or Child Protective Services.[8] (*Id.*)

Plaintiff Kelly Barule also indicates that she spent some time in the Warren County Jail and has had Orders of Protection filed against her, relating to criminal charges and to issues with her children. (Compl. at 9). During her encounters with the criminal justice system, plaintiff was separated from her children. (Compl. at 10). Plaintiff Kelly Baurle apparently began living in Fulton County with plaintiff Mark Booth, who had been awarded custody of his children. (*Id.*) Plaintiff Kelly Baurle states that after driving to Alabama to get plaintiff Stephanie Baurle, plaintiff Kelly Baurle placed all the children in "appropriate counseling, doctor [sic], and programs." (*Id.*)

Plaintiff Kelly Baurle states that, after she "moved in the children," she began

---

[7] Plaintiff apparently had four more children as time went on, some of whom are now "adult" and some of whom are still minors as listed in the caption of the complaint.

[8] The defendants include the Commissioners of Social Services in Fulton, Warren, Otsego, and Washington Counties.

having problems with Stephanie and her school. (Compl. at 11). Plaintiff then describes incidents with Mark Booth in 2006, and mentions Mark's "section 8"[9] housing, "staying elsewhere." (*Id.*) Plaintiff then states that she was arrested with Mark for violating an Order of Protection, and alleges that her children's income was "removed" so that they "got behind on the rent." They left for Georgia to stay with a "friend" because the fear of being "jailed without proof by the Courts was bothersome." (*Id.*)

The next part of the complaint discusses plaintiff Mark Booth and his problems with an injury and with Workers' Compensation in Georgia.[10] (*Id.*) Plaintiffs state that Mr. Booth consulted defendant Morrison, a Workers' Compensation Attorney, who did not help him. (*Id.*) Plaintiff Booth also consulted the Lasky Law Group in Georgia regarding his Social Security Disability application. (*Id.*) Plaintiff Booth claims that defendant Jeffrey Lasky did nothing for him, and that Booth was approved for Section 8 housing, but he was "never given an income to keep it running." Plaintiff Kelly Baurle and plaintiff Booth state that they were evicted from their home in Georgia. (*Id.*)

Plaintiffs claim that, after waiting in Georgia for "disability" from 2006 until 2012, they moved back to New York. (Compl. at 12). Mark Booth attempted to "sign

---

[9] The "Section 8" program provides assistance to financially eligible families to rent housing in the private market. http://www1.nyc.gov/site/nycha/section-8/about-section-8.page. The program provides a rental subsidy, allowing families to pay "a reasonable amount of their income toward their rent." *Id.* The program participants must comply with certain requirements in order to maintain the benefit. *Id.*

[10] Plaintiffs allege that Mark eventually obtained work in Georgia after "switching" a few times, but then got injured in August of 2006, when the loss of his children was "still on his mind." (Compl. at 11).

up for his SSDI, but he was not given "any consideration for his work history or his injury being done on the job." (*Id.*)  Plaintiff Booth did not even receive insurance for medication "until the law provided Obama Care." (*Id.*)  The complaint states that "Social Services harassed and threatened us," removing income from medical insurance.  Plaintiff Kelly Baurle also lost her drivers' license.  Plaintiffs state that "[t]he continued depriving [sic] of freedoms has made the injustices criminal." (*Id.*) The plaintiffs have attached various random documents which appear to be from Mr. Booth's Social Security Disability file.  Plaintiffs do not explain the reason for attaching these exhibits to the complaint.

The complaint contains six "Causes of Action." (Compl. at 13-14).  It is very difficult to discern what these causes of action might be.  Plaintiffs' first cause of action asks the court to resolve Mark Booth's 2006 problems with Workers' Compensation in the State of Georgia based on NY Penal Law § 176.00(5).[11]  This section contains definitions of terms used with criminal statutes prohibiting insurance fraud.  Plaintiffs may be trying to claim that the Georgia Workers' Compensation Board committed fraud in 2006 with respect to the treatment of Mr. Booth.

Plaintiffs' second cause of action states that the children were "victimized" under N.Y. Criminal Procedure Law § 30.10(2)(a) or (b), and that injuries were caused by their removal under "NY CPL § 190.30." (*Id.*)  The cause of action includes a claim

---

[11] Although the complaint cites § 175.00(5), plaintiff also states that the cause of action is under "article 176."  The reference to section 175 is clearly a typographical error because section 175 does not have a subsection (5).  However, section 176 does have a subsection (5) which refers to "Commercial Insurance," including "insurance providing disability benefits pursuant to article nine of the workers' compensation law . . . ." N.Y. Penal Law § 176.00(5).

that New York State concealed documentation of criminal activity. (Compl. at 13). However, the rest of the paragraph is difficult to understand.

The third cause of action contains claims based on the intentional deprivation of visits with their children, custodial interference, and exceeding "percentage of income" pursuant to N.Y. Penal Law § 135.45[12] and an unspecified section of the New York Social Services Law. (*Id.*)  The plaintiffs cite violations of section 305.2 of the Family Court Act, which provides, among other things, direction for law enforcement officials who take children into custody. N.Y. Fam. Ct. Act § 305.2.  Plaintiffs cite N.Y. Crim. Proc. Law §§ 180.60(4); 180.60(5) and 180.60(8). (Compl. at 13).

Plaintiffs' fourth cause of action states that plaintiff Kelly Baurle has various medical problems, including injuries caused by inhaling gases while working at Washburn's Dairy in 2002-2003. (Compl. at 14).  Plaintiffs' fifth cause of action states that "In best interest of the child persisting allegations so intimidating to young children as it is but to stalk the disabled in that manner or as with forcing medication on a child like RK, Stephanie Baurle, and Kelly Baurle with the intent to do so." (*Id.*)  "Plaintiffs complain of the taking every moment from the children to talk, laugh, and live substance free." (*Id.*)

Plaintiffs' final cause of action refers to "affirmative defenses," but essentially claims that plaintiff Kelly Baurle's income was taken during various jobs, "with intent to harm under Domestic Relations Law 240(1-b) . . . ."  Plaintiffs also claim that

---

[12] This section is entitled "Custodial interference in the second degree."  The statute indicates that a person is guilty of custodial interference, second degree, when a relative of a child who is less than 16 years old entices that child away from his or her lawful custodian, knowing that he or she has no legal right to do so.

plaintiff Mark Booth had Fulton County "Support" deducted over half of his weekly income. (*Id.*)

The relief section of plaintiffs' complaint is equally difficult to discern. (Compl. at 15). This section states that plaintiffs request the following relief: "actions brought on by targeting eg. res judicata for the privity of all parties, relating to medical cited in *Tweddle v. Alkinson* [1861] EWHC J 57, (1861) . . . with injunctive relief . . . and as well under the Unified Rule for trial courts . . . the status of the family unit is a complete loss."[13] (Compl. at 15).

## IV.    **Proper Plaintiffs**

### A.    **Legal Standards**

It is well-settled that a person who has not been admitted to practice law may not represent anyone other than himself.[14] *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007). *See also* 28 U.S.C. § 1654. In addition, in federal court, a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child or children. *Cheung v. Youth Orchestra Foundation of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990); *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL 1385890, at *1 (E.D.N.Y. Mar. 19, 2018) (citing *Cheung*, *supra*; *Iannaccone v. Law*, 142 F.3d 553, 558

---

[13] *Tweddle v. Atkinson* (1861) 1 B & S 393 at 398, 122 ER 762 at 764 stands for the proposition that under New York Law, a party, who is not a party to a contract, may not be sued for its breach, unless there is a separate basis for the non-party's liability. *MBIA Ins. Corp. v. Royal Bank of Canada*, 28 Misc. 3d 1225(A), 958 N.Y.S.2d 62 (Table) 2010 WL 3294302 at *24 (Westchester Cty. Aug. 19, 2010).

[14] A limited exception exists if an individual appears for an estate in which there are no other beneficiaries or creditors. *See Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010). The exception is not applicable to this case.

(2d Cir. 1998)).

## B.    Application

Only plaintiffs Baurle and Booth have filed IFP applications and have signed the complaint.  It does not appear that either plaintiff Baurle or plaintiff Booth is an attorney.  Thus, neither plaintiff may represent any of the other plaintiffs, whether they are adults or minors.[15]  An IFP application was sent to Ryan James Kilts, one of the plaintiffs who is identified as an "adult child."  However, the mail was returned "undeliverable."  Stephanie Baurle was sent an IFP form on March 9, 2018, but she has failed to return a completed form to the court.  In any event, neither Mr. Kilts, nor Stephanie Baurle, the other "adult child" have signed the complaint.  Thus, they may not proceed as plaintiffs in this action without personally signing the complaint, even if they submit completed IFP applications. *See Farber v. County of Suffolk*, No. 09-3255, 2009 WL 4730204, at *1 (E.D.N.Y. Dec. 1, 2009) (requiring non-minor children to sign the complaint as a prerequisite to proceeding with the action).

Plaintiff Kelly Baurle has filed a letter[16] with her motion to proceed IFP, which implies that her adult children may not even be aware that she has filed this action,

---

[15] The court recognizes that Kelly Baurle has made a motion for appointment of counsel. (Dkt. No. 8).  However, as discussed below, this court will decline to appoint counsel based on the lack of merit in the complaint generally.

[16] Plaintiff's attachment includes a second page which is a letter from the Office of Children and Family Services from February of 2018, addressed to "Eric Warner," informing him of an investigation which resulted a finding that there was no credible evidence to support a report of child abuse. (Dkt. No. 7-2 at 2).  This letter has absolutely no apparent relevance to this action, and Eric Warner is neither a plaintiff nor is he mentioned anywhere in the complaint.

including them as plaintiffs.[17] (Dkt. No. 7-2).  In fact, Kelly Baurle's letter seems to state that Stephanie Baurle refused to be a part of this action.[18] (*Id.*)  Plaintiff Kelly Baurle states that she "cannot make the children see the harm they have been caused.  I can only inform them of the proceedings." (*Id.*)  Because no IFP applications have been filed with respect to Stephanie Baurle and Ryan Kilts, and they have not signed the complaint, they are not considered plaintiffs in this action.

## V.   Rule 8

### A.   Legal Standards

The Federal Rules of Civil Procedure require that a complaint contain "'a short and plain statement of claim showing that the pleader is entitled to relief,' and that each averment be 'concise and direct.'" *Whitfield v. Johnson*, No. 18-CV-1232, 2018 WL 1385890, at *2 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) (quoting Fed. R. Civ. P. 8(a)(2), 8(d)(1)).

### B.   Application

The court is well-aware that pro se pleadings must be read to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  In this case, even if read liberally, plaintiffs' complaint fails to give the defendants fair notice of plaintiff's claims and fails to allege facts against each individual named in the caption of the complaint.  Plaintiffs' complaint is essentially a summary of the

---

[17] Plaintiff Kelly Baurle states that she "informed" Ryan J. Kilts of this action and "sent the [IFP] form to **a** Queensbury address[, and] I don't know if he will return it but it has been sent." (Dkt. No. 7-2) (emphasis added).  It is unclear whether Kelly Baurle knows exactly where Mr. Kilts lives. Clearly, Mr. Kilts has not consented to be a part of this action.

[18] Plaintiff refers to this case as a "class action." (Dkt. No. 7-2).

difficulties they have encountered in their lives, allegedly at the hands of various social

service providers and at the hands of the Workers' Compensation Board in Georgia.

Plaintiffs do not even ask for any form of comprehensible relief. (*See* Compl. at 15).

They mention "injunctive relief," but do not state what injunction they wish the court to

issue.  In addition, most of the defendants' conduct occurred many years ago, and

injunctive relief would not be appropriate, even assuming that plaintiffs' claims fell

within the statute of limitations.[19]  Thus, the complaint may be dismissed pursuant to

Rule 8.  The court will proceed to consider the possible bases for plaintiffs' complaint,

and will discuss alternative reasons for dismissal.

## VI.    Section 1983

### A.    Color of State Law

#### 1.    Legal Standards

In order to state a claim under section 1983, plaintiffs must establish that they

were deprived of a right secured by the Constitution or laws of the United States, and

that the alleged deprivation was committed "under color of state law." *American Mfrs.*

*Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999).  The law does ***not*** reach private

conduct, no matter how "discriminatory or wrongful." *Id.* (quoting *Blum v. Yaretsky*,

457 U.S. 991, 1002 (1982)). *See Sclafani v. Spitzer*, 734 F. Supp. 2d 288, 297

(E.D.N.Y. 2010) (citing *Brentwood Academy v. Tennessee*, 531 U.S. 288 (2001);

---

[19] General language requesting "injunctive relief" is insufficient. *Moore v. Conn. Dep't of Correct.*, No. 3:14-CV-1002, 2015 WL 778626, at *2 (D. Conn. Feb. 24, 2015) (citing inter alia *Bogle  Assegai v. Comm'n on Human Rts. & Opportunities*, 331 Fed. App'x 70, 71  72 (2d Cir. 2009) (plaintiff had not invoked *Ex Parte Young* exception "because although [plaintiff] stated in the jurisdictional section of her complaint that her action was for declaratory and injunctive relief, she did not actually request any specific declaratory or injunctive relief.")).

*United States v. Morrison*, 529 U.S. 598, 691 (2000)).

An exception to the above rule occurs if the private individual conspires with a state actor to commit an unconstitutional act, or when he is a willful participant in joint activity with the State or its agents. *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970)). Conclusory allegations of conspiracy, however, are insufficient to state a claim. *Id.* (citing *Spear v. Town of West Hartford*, 954 F.2d 63, 68 (2d Cir. 1992)).

### 2.    Application

In their complaint, plaintiffs have named a law firm and a private attorney, who allegedly failed to represent plaintiff Booth properly in his Georgia Workers' Compensation and Social Security Actions.  Neither the Lasky Law Group, nor defendant John E. Morrison acted under color of state law, and thus, neither defendant may be sued under section 1983.  Plaintiffs have also named Collins Mobile Homes and Sales, Inc.  It appears that plaintiff Booth worked for Collins Mobile Homes when he was injured, resulting in the Georgia Workers' Compensation claim. (Compl. at 11).

Collins Mobile Home, Inc., which appears to be a private business, does not act under color of state law for purposes of section 1983.  Plaintiffs do not indicate what the their claim against the Mobile Home company might be.  The court understands that plaintiff Booth believes that he was entitled to Workers' Compensation, and that he hired a Workers' Compensation attorney, who did not do a good job, but there is no explanation of what the violation was committed by the company.  There is no indication that Collins Mobile Home, Inc. "conspired" with any state actor to violate

14

the plaintiffs' constitutional rights.  In addition, the mobile home company is in Georgia.[20]  Thus, the complaint may be dismissed as against Collins Mobile Homes, John E. Morrison & Associates, and the Lasky Law Group for lack of state action.

### B.    Statute of Limitations

#### 1.    Legal Standards

Federal courts borrow the state law personal injury statute of limitations period for purposes of filing section 1983 actions. *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In New York State, the relevant limitations period is three years. *Owens v. Okure*, 488 U.S. 235, 250-51 (1989). See N.Y. Civ. Prac. L & R. § 214(5).  Even if the statute of limitations has run, "equitable tolling" may be available.  Equitable tolling is applied in "rare and exceptional cases" where "extraordinary circumstances" prevented the plaintiff from filing his claims within the statute of limitations. *See Abbas v. Dixon*, 480 F.3d 560, 564 (2d Cir. 2007).  Plaintiff bears the burden of establishing the applicability of equitable tolling. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000).

#### 2.    Application

This action was filed on February 9, 2018. (Dkt. No. 1)  Even assuming that the court could look to the date that plaintiff Baurle filed her Social Security action, the date of filing would be January 8, 2018.  Three years prior to January 8, 2018 is January 8, 2015.  Without any equitable tolling, claims relating to any conduct occurring prior to January 8, 2018 would be barred by the statute of limitations.  Even assuming that

---

[20] The court also does not have personal jurisdiction over these defendants, and venue would be improper in the Northern District of New York. 28 U.S.C. § 1391.  There is also no diversity jurisdiction in this case because several of the defendants are New York residents.  Diversity jurisdiction requires complete diversity. 42 U.S.C. § 1332.

some of the plaintiffs' claims are comprehensible, most of the allegations in this case involve conduct which allegedly occurred prior to 2006.  Conduct attributed to Fulton County occurred in 1990 and perhaps 2005. (Compl. at 7, 10).  Otsego County is mentioned in conjunction with conduct occurring in 1991. (Compl. at 8).  Warren County is mentioned in conjunction with conduct occurring in 1999. (Compl. at 9). Washington County is associated with conduct allegedly occurring in 2006. (Compl. at 11).

The only conduct that plaintiff Kelly Baurle describes as occurring in 2017 is that the "Sheriffs" impounded her car in 2017. (Compl. at 12). However, she does not mention which County's Sheriffs she is referring to, and her claim is that "Social Services" "removed income" from plaintiffs resulting in an inability to pay bills and having her car insurance suspended, even though she never had a license. (Compl. at 12).  Thus, whatever claims can be discerned from the complaint would likely be barred by the statute of limitations.  There is no indication that equitable tolling would apply.

## C.    Criminal Law Offenses

### 1.    Legal Standards

There is no private right of action to enforce either state or federal criminal statutes. *Carvel v. Ross*, No. 09-Civ. 722, 2011 WL 856283, at *11-12 (S.D.N.Y. Feb. 6, 2011) (citing *inter alia Abrahams v. Incorporated Village of Hempstead*, No. 08-CV-2584, 2009 WL 1560164, at *8 (E.D.N.Y. June 2, 2009) (dismissing civil suit for perjury because there is no private right of action for perjury under New York Law)).

### 2. Application

Most of the causes of action that this court can discern involve the request to

enforce the New York State Penal Law and Criminal Procedure Law.  To a lesser

extent, plaintiffs raise alleged violations of the New York Social Services Law, and the

Family Court Act.  Thus, in this case, even if the defendants violated any criminal

statutes,[21] or any New York State Statutes, these plaintiffs may not bring a claim based

on those statutes to enforce New York State criminal law.

### D. Eleventh Amendment

### 1. Legal Standards

The Eleventh Amendment provides that states have immunity against suits in

federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984).

An action against state officers in their official capacities, or an action against an

agency of the state, is tantamount to an action against the state. *Yorktown Medical*

*Laboratory v. Perales*, 948 F.2d 84, 87 (2d Cir. 1991) (official capacity actions);

*Santiago v. New York State Dep't of Correctional Services*, 945 F.2d 25, 28 n.1 (2d Cir.

---

[21] This court does **not** make any such finding.  In addition, many of the criminal laws cited by plaintiffs are not relevant to any claims that plaintiffs could possibly be making.  Plaintiff cite section 30.10(2)(a) of the New York Criminal Procedure Law which provides a statute of limitations for the prosecution of a class A felony, and then state that the children were "victimized" by this statute. Plaintiffs cite section 190.30 of the New York Criminal Procedure Law which provides rules of evidence for the Grand Jury. N.Y. Crim. Proc. Law § 190.30 and appear to state that this was the statute which allowed removal of the children. (Compl. at 13).  The court will not cite all of the statutes relied upon by the plaintiffs, but even if plaintiffs cited relevant statutes, they have no private right of action to enforce them.  One of the cases cited by plaintiffs in support of their causes of action also fails to make sense. Plaintiffs cite *Calder v. British Columbia*, which involves the historical processes relating to the legal position of indigenous people in Canada. *Calder v. British Columbia*, (AG) 197 S.C.R. 313 (1973).  Plaintiffs have not shown how this relates to their case or why this case provides them a cause of action.

1991) (agencies of the state).  Thus, plaintiffs may not sue a state entity under section 1983. *Id.*

### 2.    Application

Plaintiffs are suing the "Georgia State Board of Workers' Compensation." (Compl. at 8).  The "Board" is a state entity that would be entitled to Eleventh Amendment immunity from suit in this court.  Thus, even if this court were in Georgia, and there were no problem with the statute of limitations, plaintiffs would not be able to sue the Board under section 1983.[22]

### E.    Personal Involvement

### 1.    Legal Standards

Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).

### 2.    Application

In this case, plaintiffs have named only the Commissioners of the County Social Services Departments.  There is no indication in the complaint that any of those individuals had personal involvement in the conduct of which plaintiffs complain.  In the fact section, with respect to the county defendants, plaintiffs almost never specify an individual who engaged in the challenged conduct.  Plaintiffs do not allege a policy

---

[22] There is an exception for plaintiffs suing to obtain "prospective injunctive relief" from ongoing violations of federal law. *Surlock v. New York State Office for People with Developmental Disabilities*, __ F. App'x __, 2018 WL 1662511, at *1 (2d Cir. Apr. 6, 2018).  However in this case, plaintiffs' complaint is too confusing to determine what they might be attempting to request as "injunctive" relief.

or custom that would establish the personal involvement of any of the "Commissioners" who are named in the caption.  Thus, there would be no damage liability of any of the County Commissioner defendants.[23]

## VII.  **Appointment of Counsel**

### A.  **Legal Standards**

There is no right to appointment of counsel in civil matters.  *Burgos v. Hopkins*, 14 F.3d at 789.  Title 28 of United States Code Section 1915 specifically provides that a court may request an attorney to represent any person "unable to afford counsel."  28 U.S.C. § 1915(e)(1).  Appointment of counsel must be done carefully in order to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  *Cooper v. A. Sargenti, Inc.*, 877 F.2d 170, 172-73 (2d Cir. 1989).

In *Terminate Control Corp. v. Horowitz*, 28 F.3d 1335 (2d Cir. 1994), the Second Circuit reiterated the factors that a court must consider in ruling upon such a motion.  In deciding whether to appoint counsel, the court should first determine whether the indigent's position seems likely to be of substance.  If the claim meets this threshold requirement, the court should then consider a number of other factors in making its determination.  *See id.* at 1341 (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986)); *Sawma v. Perales*, 895 F.2d 91, 95 (2d Cir. 1990).  Among these are

> [t]he indigent's ability to investigate the crucial facts, whether

---

[23] The court does note that plaintiffs do not appear to be asking for damages, so the issue of personal involvement as an alternative basis for dismissal may not be relevant.  However, to the extent that plaintiffs complaint could have requested some sort of monetary relief, the facts as stated are not sufficient to confer personal involvement on any of the Commissioner defendants.

> conflicting evidence implicating the need for
> cross-examination will be the major proof presented to the fact
> finder, the indigent's ability to present the case, the complexity
> of the legal issues, and any special reason ... why appointment
> of counsel would be more likely to lead to a just determination.

*Hodge*, 802 F.2d at 61.  None of these factors are controlling, however, and each case

should be decided on its own facts.  *Id.*

### B.    Application

This court cannot even assume that this case has substance.  The case is

incomprehensible and borders on frivolous.  In their motion for appointment of counsel,

plaintiffs state that they have attempted to contact attorneys on their own, but then list

the attorneys who they are suing. (Dkt. No. 8).  Plaintiffs may have misunderstood the

question on the form.  They may have thought that the form was asking what counsel

they had contacted "in an effort to obtain counsel" in general, not necessarily to

represent them in this action.

While this error may weigh in favor of plaintiffs' inability to proceed on their

own because they would have serious problems understanding the proceedings, the

complaint is not "likely to be of substance."  If the complaint is not of substance, then

the court does not proceed to the other *Hodge* factors.  Based on all the issues discussed

in this Order and Report-Recommendation, it is clear to this court that plaintiffs'

complaint, at best, fails to state any sort of claim, and at worst is completely frivolous.

Thus, the court will deny plaintiffs' motion for appointment of counsel.

For the same reasons, this court will also deny appointment of counsel for the

minor children. *See Inkel v. Connecticut*, No. 3:14-CV-1303, 2015 WL 4067038, at *6

(D. Conn. July 2, 2015) (citations omitted) (declining to appoint counsel where claims brought by parent on behalf of children were not "likely to be of substance").

## VIII. Opportunity to Amend

### A.    Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once; however, leave to re-plead may be denied where any amendment would be futile. *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). In this case, the court finds that any attempt by the plaintiff to amend this complaint would be futile.

### B.    Application

This action was initially filed in plaintiff Kelly Baurle's social security appeal. It is unclear what the plaintiffs wished to accomplish by filing the information contained in this document. For the reasons discussed above in support of dismissal, no attempt at amending this complaint would succeed, particularly because most, if not all, the alleged violations occurred very much outside the statute of limitations. Some of the allegations are against private parties in Georgia, who did not act under color of state law, plaintiff's allegations are completely conclusory, and they do not allege the personal involvement of any of the County supervising defendants. Finally, plaintiffs have no private cause of action under the New York State Penal Law to enforce violations of other New York State Laws or violations of the Penal Law sections themselves.

With respect to the minor children, this court is compelled to dismiss the

complaint without prejudice, although it is unlikely, even if the minor children obtain counsel, that any part of this complaint would state a claim as to the children. *Inkel v. Connecticut*, *supra* at *6 (court's dismissal of parent's claims with prejudice did not prevent re-filing of children's claims, provided they were properly represented).

**WHEREFORE**, based on the findings above it is

**ORDERED**, that plaintiff Kelly Baurle's motion to proceed IFP (Dkt. No. 7) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED**, that plaintiff Mark Booth's motion to proceed IFP (Dkt. No. 9) is **GRANTED FOR PURPOSES OF FILING ONLY**, and it is

**ORDERED**, that plaintiffs' motion for appointment of counsel (Dkt. No. 8) is **DENIED**, and it is

**ORDERED**, that the Clerk correct the docket sheet to reflect the correct parties as indicated above on pages 2 and 3 of this Order and Report Recommendation, and it is

**RECOMMENDED**, that the entire complaint be dismissed without leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(b)(i), (ii) as frivolous and for failure to state a claim as to plaintiffs Kelly Baurle, Stephanie Baurle, Ryan Kilts, and Mark Booth, and it is

**RECOMMENDED**, that the entire complaint be dismissed without prejudice as to minor plaintiffs CK, NB, and AB.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such

objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: April 18, 2018

Hon. Andrew T. Baxter
U.S. Magistrate Judge